**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DFISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| 1. | **REBECCA WEDEL HAWZIPTA,** | ) |
| | **an individual;** | ) |
| | | ) |
| | **Plaintiff,** | ) |
| | | ) |
| **v.** | | ) |
| | | ) |
| 1. | **KAW NATION TRIBAL POLICE** | ) |
| | **DEPARTMENT;** | ) **CASE NO.: 22-cv-326-F** |
| | | ) |
| 2. | **CITY OF BLACKWELL, a municipal** | ) |
| | **Corporation;** | ) |
| | | ) |
| 3. | **JIM "JIMMY" SHERRON, in his official and** | ) |
| | **individual capacity;** | ) |
| | | ) |
| 4. | **ROBERT WILLIAM SENEY, Jr.,** | ) |
| | **an individual;** | ) |
| | | ) |
| 5. | **PACEN SENEY, an individual;** | ) |
| | | ) |
| 6. | **JOHN DOES 1-10, presently unidentifiable** | ) |
| | **employees and agents of THE CITY OF** | ) |
| | **BLACKWELL and/or KAW NATION TRIBAL** | ) |
| | **POLICE DEPARTMENT;** | ) **JURY TRIAL DEMANDED** |
| | | ) |
| | **Defendants.** | ) **ATTORNEY LIEN CLAIMED** |

**FIRST AMENDED COMPLAINT**

**COMES NOW**, the Plaintiff Rebecca Wedel Hawzipta, by and through his attorneys of

record, Laurie Koller and Tony Mareshie, and for her First Amended Complaint asserting her

causes of action against the Defendants, allege and states as follows:

**PARTIES, JURISDICTION & VENUE**

1.     The Plaintiff Rebecca Wedel Hawzipta ("Rebecca" or "Plaintiff") is an individual

residing in Kay County, State of Oklahoma.

2.     The Kaw Nation Tribal Police Department is tasked with performing police work separate and distinct from tribal activities, and intervenes in matters involving persons not associated with the Kaw Nation Tribe. It is located within this Court's jurisdiction.

3.     The Defendant City of Blackwell is a municipal corporation and political subdivision organized under the laws of the State of Oklahoma, and is properly named pursuant to Oklahoma's Governmental Tort Claims Act, 51 O.S. §151, *et. seq*.

4.     Defendant Robert William Seney, Jr. ("Seney") is a convicted felon who most recently was incarcerated in the Pottawatomie County Jail. His current incarceration location is presently unknown. The acts complained of herein underlie his criminal convictions.

5.     Upon information and belief, at all times relevant Defendant Jim "Jimmy" Sherron ("Sherron") was a resident of Kay County and the Chief of the Kaw Nation Tribal Police Department ("KNTPD"). Sherron's actions were in either his official or individual capacity.

6.     Upon information and belief, at all times relevant Defendant Pacen Seney ("Pacen") was a resident of Kay County, and Seney's adult child.

7.     Upon information and belief, at all times relevant the Defendant John Does 1-10 ("John Does") are either current or former City of Blackwell police supervisors or police officers and/or KNTPD police officers.

8.     The majority of incidents giving rise to this cause of action occurred in Kay County, State of Oklahoma.

9.     This matter was removed to this jurisdiction by the City of Blackwell on April 19, 2022.

## STATEMENT OF FACTS

10.     Seney was an assistant police chief with the KNTPD. Sherron, the KNTPD Chief, was Seney's superior officer.

11.     Briefly, Rebecca and Seney were in a personal relationship, off and on, from 2015 through early 2019, at which time she permanently ended the relationship.

12.     Seney had become violent towards Rebecca and her children, and was an abuser of illegal drugs such as methamphetamine. Rebecca believed Seney posed a grave danger to herself and her children

13.     After the relationship ended, and beginning in or near March 2019, Seney began to stalk and harass Rebecca and her children at their home and when she went out into the public.

14.     Seney used law enforcement resources and equipment to track the Plaintiff's whereabouts in order for him to stalk and harass her.

15.     Rebecca began keeping a diary of these occurrences based on the recommendations of her friends she had told, as well as the Kay County district attorneys' office.

16.     Seney had surreptitiously installed audio and video surveillance throughout the interior of the KNTPD police station to observe whether Rebecca was inside reporting his conduct. Upon belief, this equipment may to this day still be in place as Seney was arrested before he could remove it.

17.     Seney knew Plaintiff was at KAW department to complain about his unlawful conduct discussed herein because of the surveillance equipment he had installed inside the police station.

18.     Seney surreptitiously placed a tracking device underneath, and installed listening devices in, Rebecca's car. The tracking device was found by a mechanic and then-fiancée Alex Hawzipta ("Alex"), who told Rebecca and later contacted Sherron.

19.     Alex showed Sherron the tracking device he found, and Sherron even took pictures of it. Sherron took no employment action against Seney after the tracking device was located.

20.     Sherron had known Seney was stalking and harassing Rebecca approximately one month before being shown the tracking device.

21.     Over the next several months, Seney followed Rebecca while she was at grocery stores, gas stations, and salons, he parked outside of her place of employment, went to her son's home looking for her and to menace her son.

22.     There are numerous hours of video surveillance taken by Seney of the Plaintiff at stores and other places near where she lived.

23.     Rebecca made numerous police reports to KNTPD, and specifically to Sherron. Sherron did nothing in response to her reports and, upon information and belief, did nothing to remove Seney from the KNTPD for his behavior.

24.     Out of fear for her and her teenaged children that lived with her at home, Rebecca and her family in August 2019 began living in hotels.

25.     Seney managed to track Rebecca down at eight separate motels, he had parked outside these motels and left notes on Rebecca's car, and even used an aerial drone to photograph her and her children there.

26.     Seney was formerly employed as a police officer with BPD for approximately 8 years. He remained friends with many BPD officers and employees during all times relevant to this action.

27.     Rebecca reported for the first time to the Blackwell Police Department ("BPD") that Seney was stalking her when she was driving through Blackwell, Oklahoma. BPD officer Ty Owens ("Owens") took Rebecca's complaint. During this incident, Seney was driving dangerously close and erratically behind Rebecca.

28.     Owens refused to believe Rebecca's complaint, telling Rebecca to not call him or BPD unless she knew it was Seney.

29.     On another occasion, Seney had trapped Rebecca inside her car and was beating it with a crowbar causing visible damage. Rebecca drove herself to BPD to report this event, whereupon some pictures were taken of the damage. No BPD employee or officer took a report, or expressed any concern towards Rebecca.

30.     Seney openly threatened Rebecca via text messaging with BPD reprisal or retaliation because she was ignoring Seney.

31.     Prior to her complaint to Owens, Rebecca saw Seney, who had been taking pictures of her, throwing the photographs out of his car window.

32.     During this event, Rebecca was speaking to another person on her cell phone, Julienne Ihrig ("Ihrig"), who overheard Seney's threatening screams at Rebecca. Ihrig thereafter called Sherron to report Seney's threatening behavior she overheard. Sherron did not act to protect Rebecca from Seney following this call.

33.     Rebecca told Owens that Seney had been throwing the photographs of her from his car to convince Owens she was being stalked. Rebecca thereafter called her then-boyfriend and current spouse, and asked him to leave work so he could retrieve the photographs Seney threw out of his car window.

34.     Owens told Rebecca he still did not believe her.

35.     On another occasion, Rebecca called BPD to complain that Seney was again stalking and harassing her. Owens again took the complaint call, and still disbelieved her. Owens further condescendingly told Rebecca not to call again unless she was certain it was Seney.

36.     Between November 2019 – January 2020, Seney's harassment escalated, including him swerving his vehicle in a manner to force Rebecca off the road. After being forced into a ditch, Seney exited his vehicle and personally confronted Rebecca demanding her cell phone. Rebecca ran from her car and down the road out of fear for her life, Seney jumped into his car and gave chase.

37.     Rebecca managed to flag down a car and begged the driver to call the police. Seney caught up to them and shouted at that driver that he "was the police."

38.     Rebecca called Sherron several times while being followed by Seney.

39.     Ihrig contacted Sherron several times to report Seney's threatening behavior. Sherron continued to not act to protect Rebecca from Seney. Sherron instead acted to protect Seney.

40.     Each time Rebecca complained to Sherron about Seney's threatening behavior, Sherron refused to act to protect her. On one occasion, Seney had driven his vehicle into the back of Rebecca's while driving, then ran from his car to Rebecca's car and broke off her key in the ignition. Rebecca was still able to drive the car.

41.     Rebecca telephoned Alex and told him Seney was following her. Alex told Rebecca to go to his place of employment where he and his coworkers were waiting to help Rebecca and to protect her from Seney.

42.     Thereafter, Alex's co-workers called Sherron and told him to get Seney, as Seney was out of control.

6

43.     Seney fled from that scene in his car, but ran out of gas a short distance from Alex's place of employment. Sherron and another law enforcement officer eventually found and met Seney.

44.     Seney was not arrested or detained by Sherron, and never spoke to Rebecca about what had occurred.

45.     Later, Sherron and Seney were witnessed at Seney's home having a conversation. Sherron did not relieve or suspend Seney of his position with KNTPD but instead placed him in the position of a traffic officer.

46.     Importantly, a female KNTPD officer, Samantha Smith ("Smith"), frequently impersonated Rebecca on telephone calls with Seney in order to convince others Rebecca and Seney were in a relationship.

47.     On January 3, 2020, Rebecca was at her home. She had been cleaning her yard and was walking towards her carport to throw trash into a receptacle. She was surprised and set upon by Seney, who brandished a silver handgun, pointed it at her head, forced her into the car, and instructed her to drive.

48.     Seney kidnapped Rebecca for approximately thirty (30) minutes.

49.     Smith had impersonated Rebecca on the day she was kidnapped.

50.     Seney eventually freed Rebecca, then fled and became a fugitive. While he was eluding law enforcement, BPD searched Rebecca's home believing she had let Seney back in her home after she was freed.

51.     He was eventually apprehended after an eight-hour man hunt.

52.     Seney was charged with numerous felonies, and later pled guilty to federal gun possession crimes. He received a 96-month sentence in November 2020. He further received lengthy, concurrent sentences for state crimes he committed against Rebecca.

53.     During Seney's sentencing hearing, Rebecca was too distraught to read the victim impact statement she had prepared. She handed the statement to the Court, which was read by federal district court Judge Bernard Jones.

54.     During the sentencing hearing, Pacen verbally acted out towards the Court and Rebecca to the point where a special agent of the Kay County district attorney's office had to intervene.

55.     Pacen continued to be confrontational and obstructive in the courthouse hallway, which also required intervention.

56.     Over the course of the last year, Rebecca has witnessed Pacen driving his vehicle in front of her home. She witnessed Pacen purposefully driving back and forth at her house, and even slowing, so he could be seen by Rebecca or her family.

57.     Pacen has increased this activity over the course of the past several months.

58.     Rebecca has reported Pacen's activity to the district attorney's' office, who informed her she should keep a diary of these occurrences.

59.     Over the course of the past two years, Rebecca has undergone numerous hours of psychological counseling. Until recently, she had either blocked out or failed to comprehend certain events that occurred when Seney was menacing and stalking her.

60.     Rebecca had complete lack of awareness of the cause and extent of the emotional harm she suffered until recently. Further, because Rebecca could not process what had happened,

or piece together all of the events that led up to her being kidnapped and having her life threatened, it was a legal impossibility for her to pursue this matter with reasonable diligence.

61.     Rebecca has become so emotionally and psychologically debilitated and agoraphobic that she cannot leave her home without feeling terror. Rebecca suffers from severe post-traumatic stress disorder and is in counseling.

### FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983
### PLAINTIFF V. KNTPD AND CITY OF BLACKWELL/BPD

For the First Cause of Action against KNTPD and City of Blackwell, the Plaintiff Rebecca Wedel Hawzipta adopts and re-alleges all the allegations above as if fully set forth herein and further alleges and states as follows:

62.     KNTPD and City of Blackwell, through BPD, either separating or collaboratively, acting under color of statute, regulation, custom or law of the State of Oklahoma, caused the Plaintiff to be subjected to the deprivation of her rights, privileges, and immunities secured by the Fourth and Fourteenth Amendment of the Constitution of the United States and its laws in violation of 42 U.S.C. § 1983. The acts of these Defendants were reckless, knowing, intentional, malicious and/or wanton violation of the Plaintiff's rights and renders them liable in an action at law or other proceeding for redress of the injuries sustained.

63.     The actions of these government defendants by its failure to adopt proper and constitutional policies and customs created an environment wherein its employees could freely and without fear of discipline fail to respond to situations such as the Plaintiff's. The violations of the policies by these government defendants are so prevalent they amount to a custom or practice that has been ratified by the condoning of the same.

64.     KNTPD and City of Blackwell, through BPD had a policy, practice, custom or procedure of ignoring the misconduct of law enforcement officers and failing to report or investigate its misconduct or illegal actions of its officers. As to BPD, this included without limitation Owens' refusal to investigate Rebecca's pleas for help from being stalked and harassed by Seney, BPD assuming Rebecca was protecting Seney after she had been kidnapped, BPD not complying with Oklahoma law governing the reporting of domestic violence and the protection of victims, and other acts and omissions that will be revealed over the course of discovery.

65.     BPD had a policy, practice, custom or procedure of failing to discipline officers/deputies that violate the constitutional or lawful rights of citizens when called upon to act.

66.     Despite knowing of the potential for harm, City of Blackwell/BPD deliberately ignored its responsibility by failing to implement even a single policy or directive regarding how BPD officers are to engage and protect citizens who report acts of domestic violence against law enforcement officers. Such actions were in violation and contravention of at least the following Oklahoma statutes:

> 22 O.S. §40.6 - Duty to Keep Record of Reported Incidents of Domestic Abuse
> - Monthly Report requires maintaining records of all domestic abuse incidents;
> 22 O.S. §60.16 - Duties of Police Officer - Emergency Temporary Order of
> Protection ("A peace officer shall not discourage a victim of domestic abuse
> from pressing charges against the assailant of the victim."); 22 O.S. §60.15 -
> Notice of Victim's Rights requires law enforcement to inform a person subject
> to domestic violence of certain rights, among them the "right to request
> protection from any harm or threat of harm arising out of your cooperation with

law enforcement and prosecution efforts as far as facilities are available and to

be provided with information on the level of protection available…")

67.     BPD and John Does create a dangerous situation by failing to protect the Plaintiff

from Seney's unlawful and felonious acts of domestic violence and stalking.

68.     During the constitutional violations described above, the government defendants,

in particular Sherron and BPD officers, stood by without intervening to protect Rebecca and to

prevent the violation of her constitutional rights, including her equal protection rights and right to

privacy under the Fourteenth Amendment.

69.     The government defendants acted with deliberate indifference to Plaintiff's

constitutional rights to privacy and to be kept reasonably safe from police officers such as Seney, who

had a documented history of stalking and harassing the Plaintiff, all in  violation of her constitutional

rights under the Fourteenth Amendment to the United States Constitution.

70.      The actions and inactions of the superior officers and individuals in authority that

allowed the inappropriate conduct to take place were an abuse of executive power so clearly

unjustified by any legitimate objective so as to be barred by the Fourteenth Amendment to the U.S.

Constitution.

71.     At all times relevant herein, one or more of the supervisors and/or policymakers at

these government defendants promulgated, propagated, employed, and/or organized illegal and

illegal customs and practices, including those targeting the Plaintiff.

72.     The supervisors and/or policymakers at these government defendants have a duty

and responsibility for training and supervising its employees, agents, and representatives to protect

the constitutional rights of citizens such as the Plaintiff.

73.     The government defendants' managerial or supervisory employees failed or refused

to train their employees who had engaged in the improper and unlawful activity discussed

throughout to such the degree it amounted to deliberate indifference to Rebecca's constitutional and lawful rights.

74.     Because of the positions occupied by Seney, Sherron, Owens, John Does, and their immediate supervisors, and the horrific harms Rebecca suffered as a result, establishes the obviousness of inadequate training, and such would likely result in the violation of constitutional rights. Persons such as Sherron, Smith Owens, John Does, or others in positions of authority, refused or failed to act appropriately despite knowing Seney posed a substantial risk of serious harm to Rebecca.

75.     The supervisors and/or policymakers at these government defendants knew and disregarded or otherwise did not follow its policy, rules, and regulations and willfully and intentionally refused to undertake the necessary remedial efforts to protect Rebecca. Indeed, their failure to adequately and properly train its employees, agents, and representatives constitutes deliberate indifference to the rights of persons such as the Plaintiff.

76.     The violations of the Plaintiff's constitutional rights under the Fourteenth Amendment both directly and proximately caused her harm and damages.

77.     KNTPD and City of Blackwell acted deliberately, intentionally, recklessly, in conscious disregard, and in gross indifference to the Plaintiff's federally-protected rights. Indeed, these Defendants exhibited evil motive and intent and/or demonstrated reckless or callous indifference her federally protected rights entitling her to an award of punitive damages.

78.     Rebecca suffered grievous emotional distress, and suffered irreparable harm to include the loss of his constitutional rights entitling him to relief both at law and in equity.

### SECOND CAUSE OF ACTION
### VIOLATION OF 42 U.S.C. §1983
### PLAINTIFF V. SHERRON, SENEY, AND JOHN DOES 1-10 (INDIVIDUAL CAPACITY)

For the Second Cause of Action against Sherron, Seney, and John Does 1-10, the Plaintiff Rebecca Wedel Hawzipta adopts and re-alleges all of the allegations above as if fully set forth herein and further alleges and states as follows:

79.     Sherron, Seney, and John Does, in their individual capacities, personally participated in or condoned the terrorizing of the Plaintiff.

80.     The conduct by Sherron, Seney, and John Does was at times outside the course and scope of their employment, or done in conjunction or collaboration with different law enforcement entities.

81.     Sheriff West, Carter, and John Does, acting under color of law, caused Rebecca to be subjected to the deprivation of her rights, privileges, and immunities secured by the Constitution of the United States and its laws. The acts of these Defendants were recklessly, wantonly, maliciously, knowingly, and/or intentionally in violation of the Plaintiff's rights and render these Defendants liable in an action at law, suit in equity, or other proper proceedings for redress of the following: refusing to properly train, supervise, and monitor its personnel, failing to protect Rebecca from the circumstances created and exacerbated by Seney while he was employed by KNTPD or even while off duty; and other failures to be revealed over discovery.

82.     As a result of the unconstitutional and illegal actions by Sherron and the John Does, Rebecca suffered egregious psychological torment, physical pain and suffering, being kidnapped and her life threated at gunpoint by Seney, and severe emotional distress. The Plaintiff is entitled to compensatory damages from these Defendants for these injuries.

83.     Sherron, Seney, and the John Does' deliberate indifference to the Plaintiff's rights violated her rights under the Fourteenth Amendment and thus violated 42 U.S.C. § 1983.

13

84. Sherron, Seney, and the John Does exhibited malicious motive and intent and/or demonstrated reckless indifference to Rebecca's federally protected rights and showed deliberate indifference to her entitling the Plaintiff to an award of punitive damages against them.

### THIRD CAUSE OF ACTION
### SUPERVISOR LIABILITY/OFFICIAL CAPACITY LIABILITY (42 U.S.C. § 1983)
### PLAINTIFF V. SHERRON AND JOHN DOES 1-10

For the Third Cause of Action against Sherron and John Does 1-10, the Plaintiff Rebecca Wedel Hawzipta adopts and re-alleges all of the allegations above as if fully set forth herein and further alleges and states as follows:

85. There is an affirmative link between the aforementioned acts and/or omissions by Sherron being deliberately indifferent to Plaintiff's need for protection of her physician safety and life resulting from Seney's conduct.

86. Sherron knew and/or it was obvious that his maintenance of the aforementioned policies, practices and/or customs posed an excessive risk to the safety and life of persons such as the Plaintiff.

87. Sherron disregarded the known and/or obvious risks to the safety of the Plaintiff by outright ignoring her pleas for help from his subordinate employee, Seney.

88. Sherron, through his continued encouragement, ratification, and approval of the aforementioned policies, practices, and/or customs, in spite of their known and/or obvious inadequacies and dangers, was deliberately indifferent to the Plaintiff

89. As a direct and proximate result of the aforementioned policies, practices and/or customs, Plaintiff suffered injuries and damages as alleged herein.

### FOURTH CAUSE OF ACTION
### TORT CLAIMS/INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### PLAINTIFF V. SENEY, PACEN, SHERRON, AND JOHN DOES 1-10

For the Fourth Cause of Action against Seney, Pacen, Sherron, and John Does 1-10, the Plaintiff Rebecca Wedel Hawzipta adopts and re-alleges all of her allegations above as if fully set forth herein and further alleges and states as follows:

91.     The complained of conduct by Seney, Sherron, and John Does 1-10 was with knowledge, reckless, malicious, and was otherwise of such a degree as to deprive him of any protection of the Oklahoma Governmental Tort Claims Act, 51 O.S. § 151, *et. seq.* John Doe 1-10 are therefore individually liable in tort to the Plaintiff for their gross negligence and intentional infliction of emotional distress.

92.     Pacen, for himself, already knew the Plaintiff was suffering from the grievous emotional distress and fear inflicted onto her by his father, Seney. Despite this knowledge, Pacen continues to stalk and menace the Plaintiff with the intent to perpetuate and worsen the Plaintiff's current emotional distress.

93.     Seney, Pacen, Sherron, and the John Does' actions and conduct were intentional and reckless, and the same was of an extreme and outrageous nature. Furthermore, such actions and conduct were so extreme and outrageous as it went beyond all possible bounds of decency and would be considered atrocious and utterly intolerable in a civilized society.

94.     The Plaintiff suffered and experienced actual emotional distress because of the acts of these Defendants, and said distress was severe.

95.     The Plaintiff is entitled to recover actual and punitive damages, and any other relief allowable by law against these Defendants.

### FIFTH CAUSE OF ACTION
### NEGLIGENCE
### PLAINTIFF VS. SENEY

For the Fifth Cause of Action against Seney, the Plaintiff Rebecca Wedel Hawzipta adopts and re-alleges all of her allegations above as if fully set forth herein and further alleges and states as follows:

96.     Seney owed a legal duty to the Plaintiff to not inflict injury, impose fear or terror, and not to commit any act that would result in physically and psychologically injuring the Plaintiff.

97.     Seney breached these duties, and others to be discovered upon the completion of discovery. Such duties were both foreseeable and consistent with sound public policy, and that such breaches would cause injury to persons such as the Plaintiff.

98.     As a direct and proximate result of Seney's breach of the aforementioned duties, the Plaintiff suffered personal injuries, compensable damages, and other particulars to be proven at trial.

99.     Seney exhibit evil motive and intent and/or demonstrated reckless or callous indifference towards the Plaintiff entitling her to an award of punitive damages from him.

### SIXTH CAUSE OF ACTION
### 42 U.S.C. §§1983, 1985, 1986-CIVIL CONSPIRACY
### PLAINTIFF VS. KNTPD, BLACKWELL, SENEY, SHERRON AND JOHN DOES

For the Sixth Cause of Action against the Defendants, the Plaintiff Rebecca Wedel Hawzipta adopts and re-alleges all of her allegations above as if fully set forth herein and further alleges and states as follows:

100.    The conspiratorial acts complained of were based on the Plaintiff's gender, female. The Defendants involved are "persons" for the purposes of 42 U.S.C. § 1986.

101.    The KNTPD, Blackwell, Seney, Sherron, John Does, and other persons who may become known upon the completion of discovery, acted in concert to commit the unlawful acts of stalking, harassment, assault and battery, negligence, intentional infliction of emotional distress,

16

and other tortious or even criminal acts and omissions against the Plaintiff. This includes without limitation: refusing to believe the Plaintiff's pleas to stop Seney from stalking, menacing, and harassing her; ignoring the Plaintiff's reports of Seney stalking, menacing, and harassing her; allowing or condoning Seney to continue his campaign of terror against the Plaintiff, selectively enforcing state law prohibiting Seney's conduct; and committing other unlawful acts and omissions to be revealed upon the completion of discovery.

102.   The Defendants, collectively, agreed through both words and conduct to deprive the Plaintiff of her rights under the Fourteenth Amendment, and exercising the rights and privileges of being a United States citizen. This included depriving the Plaintiff of her fundamental and constitutional right to privacy, and equal protection/equal privileges of the laws.

103.   Defendants had the power to prevent the wrongful acts, or to aid in preventing the commission of the same.

104.   KNTPD, Blackwell, Seney, Sherron, and John Dos acted in furtherance of the conspiracy in numerous ways, including by ignoring the Plaintiff's repeated pleas for help, ignoring tracking devices found on her car, ignoring, or disregarding her complaints about Seney.

105.   Defendants failed or refused to prevent the conspiracy, or to aid in preventing the commission of the same.

106.   KNTPD, Blackwell, Seney, Sherron, and John Does conspired with themselves and others, to ignore the Plaintiff's pleas for help to stop Seney in order to deprive her of her constitutional rights under the Fourteenth Amendment.

107.   The Defendants, and other persons who may become known upon the completion of discovery, were in agreement to inflict the aforementioned wrongs by engaging in presently known overt acts and those overt acts that will be revealed over the course of discovery.

17

108.    The Defendants violated Plaintiff's constitutional rights under the Fourteenth Amendment causing her harm. As a result of these unconstitutional and illegal actions, the Plaintiff endured a deprivation of her liberty, pain and suffering, humiliation, embarrassment, and emotional distress for which she is entitled to compensatory damages.

### PUNITIVE DAMAGES

For the Punitive Damages claim against the Defendants, the Plaintiff Rebecca Wedel Hawzipta adopts and re-alleges all of her allegations above as if fully set forth herein and further alleges and states as follows:

109.    The Plaintiff is entitled to punitive damages on her claims brought pursuant to 42 U.S.C. §§1983, 1985, 1986 as the pertinent Defendants' conduct, acts and omissions alleged herein constitute reckless or callous indifference to federally protected rights.

110.    Plaintiff is entitled to punitive damages on her tort claims against Seney, Pacen, Sherron and the John Does as their conduct, acts and omissions alleged herein constitute reckless disregard for her rights.

**WHEREFORE**, premises considered, the Plaintiff, Rebecca Wedel Hawzipta, prays the Court for: a declaration that the conduct engaged in by the Defendants was in violation of her rights; compensatory and punitive damages in excess of the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code for injuries such as his emotional distress, mental anguish, fear of the future, and humiliation; costs and expenses, including reasonable attorneys' fees provided for by applicable law; an assessment of damages to compensate for any tax consequences of this judgment; and for any such other legal relief this Court deems just and proper.

Respectfully submitted,

By: /s/ A.Laurie Koller
Laurie Koller, OBA #16857
Koller Trial Law, PLLC
2504 E. 21 Ste B
Tulsa, OK 74104
laurie@kollertriallaw.com
(918) 216-9596

and

Eric Anthony Mareshie, OBA#18180
6528 East 101st Street
Suite D-1, Box 279
Tulsa, Oklahoma 74133-6700
tulsalegal@gmail.com
(918) 519-3771
(918) 970-6927—Facsimile
**Attorneys for Plaintiff**

## CERTIFICATE OF MAILING

I hereby certify that on May 14, 2022, I electronically transmitted the attached document to the Clerk of the Court using the ECF system for filing. Based on the records currently on file of this case, the Clerk of the Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Stephen Geries
COLLINS ZORN & WAGNER, PLLC
429 N.E. 50th Street, Second Floor
Oklahoma City, Oklahoma 74105

Robert D. Carter
C. Austin Birnie
CONNER & WINTERS
4100 First Place Tower, 15 East Fifth Street
Tulsa, Oklahoma 74103

A. Laurie Koller

**ATTORNEY LIEN CLAIMED**